# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD DIVISION

**ERNIE M. GRAHAM**
**obo**
**ANNETTE R. GRAHAM,**

    **Plaintiff,**

**v.**                                                                **Civil Action No. 1:16-cv-03837**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Claimant's Motion for Judgment on the Pleadings and Memorandum in Support of Claimant's Motion for Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 10). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Annette Rae Graham, filed an application for SSI on September 6, 2011. Claimant alleged disability beginning July 31, 2011. The claim was denied initially on February 24, 2012, and upon reconsideration on February 7, 2013. Claimant filed a request for hearing on March 29, 2013. A video hearing was held on June 4, 2014. Claimant appeared in Bluefield, West Virginia, and the Administrative Law Judge presided over the hearing from Roanoke, Virginia. The Administrative Law Judge (ALJ) denied Claimant's application on September 11, 2014 (Tr. at 9-24). The Appeals Council denied Claimant's request for review on February 18, 2016 (Tr. at

1-3). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date of September 6, 2011 (Tr. at 11). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: status post left leg and right upper extremity injuries stemming from accidents in 1997 and 2003; left lower extremity surgical hardware removal in May 2014; chronic obstructive pulmonary disease; lumbar spine degenerative disease; generalized osteoarthritis; osteopenia; neuropathy; major depressive disorder; generalized anxiety disorder; history of moderate alcohol disorder; and severe stimulant use disorder, in sustained remission. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1. The ALJ then found that Claimant has a residual functional capacity to perform a range of work at the sedentary exertional level (Tr. at142). The ALJ found Claimant would have the following limitations: Claimant would retain the capacity for standing/walking for 2 hours in a normal 8 hour work day; sitting for 6 hours in a normal 8 hour work day; lifting/carrying 10 pounds; with occasional stooping, crouching, and kneeling. Claimant would be precluded from work involving climbing of ladders or scaffolds; working at heights; and performing work with operation of foot controls using the left lower extremity. Claimant would also require work with no exposure to respiratory irritants at concentrated levels or exposure to excessive temperatures. However, she would retain the ability to perform overhead reaching with the right upper extremity; and, frequent but not constant right

upper extremity reaching in other directions, as well as handling/fingering. Claimant would "retain the mental capacity to fulfill simple instructions with no more than slight limitations; satisfactorily, but with more than slight limitation, fulfill complex work instructions; interact appropriately with the general public, supervisors and coworkers; and response to routine work changes" (Tr. at 14).

The claimant additionally may incur up to 1 day per month on average work absence due to symptoms and pain associated with impairments. (*Id.*) The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 22). The ALJ concluded that considering Claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform such as assembler and weight tester (Tr. at 23). Consequently, Claimant was found not under a disability (Tr. at 24).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

## Claimant's Background

Claimant was born on February 17, 1971 (Tr. at 35). Claimant attended school through the 11th grade. She has a GED (Tr. at 36).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's "rejection of the opinion" of Claimant's treating advanced nurse practitioner is not supported by substantial evidence (ECF No. 9). Claimant avers that the ALJ "made no findings which disputed any of the claimant's complaints involving her right upper extremity." (*Id.*) Additionally, Claimant asserts that the ALJ's "findings regarding the claimant's credibility are so vague that no reasonable review can be undertaken of them." (*Id.*) In response, Defendant asserts that substantial evidence supports the ALJ's evaluation of Claimant's treating advanced nurse practitioner's opinion, as it was inconsistent with the advanced nurse practitioner's own objective findings (ECF No. 10). Further, Defendant avers that Claimant is unable to demonstrate prejudicial error and her request that the Court reweigh the evidence is improper. (*Id.*)

## Medical Record

On October 5, 2011, James P. Culley, M.D., reported in Claimant's treatment notes that the screws holding a plate in place in Claimant's lower left extremity were "beginning to back out and are palpable now" (Tr. at 508).

On April 3, 2012, Jessica Hall, nurse practitioner, assessed Claimant and recommended physical therapy for Claimant's shoulder pain (Tr. at 542-542). On November 27, 2012, Claimant was seen by Brent M. Johnson, M.D., due to right shoulder pain (Tr. at 554-557). Claimant

5

reported that she did not attend physical therapy as recommended by Ms. Hall (Tr. at 554). Dr. Johnson gave Claimant a steroid injection in her right shoulder (Tr. at 557).

On April 9, 2014, and April 23, 2014, the treatment notes of Kathleen Burge, APRN, state that Claimant's back pain is not radiating and is improving (Tr. at 576-581). Claimant reported that she did not experience weakness in her limbs and that she had no difficulty walking. (*Id.*) Ms. Burge opined that Claimant had "normal tone and motion strength" and "normal movement of all extremities" (Tr. at 577). Claimant was "ambulating normally." (Tr. at 577, 581) Claimant had "normal gait and station." (*Id.*) However, Ms. Burge prescribed a cane (Tr. at 590).

On April 30, 2014, Claimant was seen by Gary P. McCarthy, M.D., for evaluation of knee pain (Tr. at 570). Dr. McCarthy reported that Claimant had a normal gait and no limp and that Claimant was ambulating without assistive devices (Tr. at 572).

The ALJ held a video hearing in this matter on June 4, 2014. On June 27, 2014, Ms. Burge faxed Claimant's counsel amended treatment notes for the visits on April 9, 2014, and April 23, 2014 (Tr. at 595-606). The amended treatment notes for Claimant's April 9, 2014, visit stated that Claimant has "difficulty raising her right shoulder and develops pain when even with collar bone" (Tr. at 597). The amended treatment notes stated that Claimant has limited range of motion of her right wrist and her left ankle and foot. The amended treatment notes reported that the hardware in Claimant's left ankle appears to be "working its way out of the plate." (*Id.*)

The amended treatment notes for Claimant's April 23, 2014, visit stated that Claimant reported experiencing weakness, numbness, tingling, swelling, grinding and instability in her left lower extremity (Tr. at 600). The amended treatment notes stated that that Claimant reported

6

experiencing weakness, numbness, tingling, swelling, popping/clicking, instability and "radiation down arm" of her right upper extremity (Tr. at 601). Ms. Burge's treatment notes reflected that Claimant's "left ankle has hardware that is working its way out of the plate" (Tr. at 597).

On May 15, 2014, Dr. McCarthy removed the hardware in Claimant's left tibia and fibula (Tr. at 563). Dr. McCarthy's operative report stated "There was a large medial tibial plate with bone overgrowing the plate and the screws. There was a fractured lateral malleolar plate with loose screws. The fractures were all healed." (*Id.*)

Ms. Burge completed a Physical Residual Functional Capacity Assessment (PRFC) of Claimant on approximately June 29, 2014 (Tr. at 607-613). Ms. Burge noted among other things that Claimant was able to lift less than 10 pounds occasionally, stand less than two hours in an eight hour workday and sit less than six hours in an eight hour workday, unable to stoop, had a limited range of motion in her right shoulder including reaching overhead (Tr. at 608). Ms. Burge noted that Claimant has limited strength and range of motion of the right upper extremity. Ms. Burge reported that Claimant has had multiple orthopedic surgeries on her upper and lower extremities, including the removal of hardware in her left lower ankle (Tr. at 609). It was noted that Claimant is unable to sit due to swelling in her lower extremity and that Claimant′s bone mass has significantly decreased. (*Id.*) Ms. Burge reported that Claimant has difficulty ambulating and needs the assistance of a can to walk short distances (Tr. at 612). Ms. Burge stated that Claimant′s right shoulder injury has been worsening and limiting Claimant′s right shoulder range of motion.

7

Discussion

The ALJ's decision on September 11, 2014, states that "While the undersigned has given consideration to Ms. Burge's opinion, the treatment notes surrounding the surgical hardware removal does not reflect the broader period. Partial weight is assigned to Ms. Burge's opinion, as Ms. Burge 'amended' her office notes and more accurately reflects the subjective complaints reported by the claimant, rather than the broader clinical evidence in the record" (Tr. at 20-21). Claimant asserts that the ALJ failed to give appropriate weight to the opinion and physical residual functional capacity form completed by Ms. Burge because Ms. Burge is an advanced nurse practitioner (ANP) (ECF No. 9). However, Ms. Burge's opinion reflected in the physical residual functional capacity form is inconsistent with Ms. Burge's own objective findings.

Ms. Burge's inconsistent opinion includes statements regarding Claimant's right upper extremity. In Ms. Burge's treatment notes from April 9, 2014 and April 23, 2014, Ms. Burges reported that Claimant denied weakness and had normal tone, motor strength and normal movement of all extremities (Tr. at 576-577, 580). However, in Ms. Burge's amended treatment notes dated April 23, 2014, she opined that Claimant had limited strength and rage of motion in her right and left upper extremities (Tr. at 608).

Claimant asserts the ALJ failed to provide a basis for finding that although Claimant was limited, she did not meet or equally meet the Listings for musculoskeletal impairments, major dysfunction of a joint and peripheral neuropathy due to disorganization of motion function in Claimant's extremities resulting in sustained disturbance of gross and dexterous movements, or gain and station (Tr. at 12). However, the ALJ addressed impairments alleged when reviewing and discussing the weight given to medical opinions on Claimant's upper extremity and left lower extremity.

8

In the decision, the ALJ discussed the conservative treatment Claimant received in response to her reported complaints of shoulder pain (Tr. at 18). The ALJ held that "Clinical diagnostic assessments included right arm pain, gout, left leg pain, depression, anxiety, neuropathy and chronic pain syndrome: however, objective physical examinations yielded relatively negative findings and no evidence of significant musculoskeletal, neurological, cardiopulmonary, mental or exertional symptomology." (*Id.*) The ALJ's decision pointed out that Claimant declined physical therapy. Additionally, the ALJ stated that "X-rays of the right shoulder indicated no significant findings and MRI of the right shoulder showed fibrosis, anterior interval edema and subdeltoid bursal effusion, with no substantial abnormalities" (Tr. at 19).

The ALJ found that "Radiological examination of the claimant's right shoulder failed to indicate significantly abnormal findings and the undersigned finds the diagnosis is speculative and largely based on the subjective complaints asserted by the claimant" (Tr. at 21). In addition to discussing findings pertaining to Claimant's right upper extremity in the decision, the ALJ provided the following limitations, in part, in the RFC.

- Claimant can lift/carry 10 pounds;
- Claimant is precluded from work involving climbing of ladders or scaffolds;
- Claimant retains the ability to perform overhead reaching with the right upper extremity; and, frequent but not constant right upper extremity reaching in other directions, as well as handling/fingering (Tr. at 14).

Additionally, the ALJ discussed Claimant's ability to ambulate effectively due to impairment in her left lower extremity. The ALJ stated that "clinical and objective findings do not show the severity required in the Listings." (*Id.*) The ALJ found that Claimant did not meet the severity of Listing 1.02, regarding major dysfunction of a joint (Tr. at 12). The ALJ specified that Claimant "neither established that he/she is unable to ambulate effectively."

9

The ALJ held that Claimant did not meet the severity of Listing 11.14, regarding peripheral neuropathy, "because they do not have disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." (*Id.*) The ALJ discussed Claimant's medical records and found that "Clinical consultations indicated distal left tibia/fibia fracture of the ankle, lacerations, alcohol intoxications, however, without acute injury" (Tr. at 17). The ALJ stated that Claimant's treating physicians advised Claimant to receive conservative treatment and surgical intervention and therapy to repair musculoskeletal injuries. (*Id.*) The ALJ stated that "Surgical left grade II distal tibia and fibia fracture repair proved relatively normal with no significant complications noted in operative notes." The postoperative evaluation of Claimant's left tibia was uncomplicated. (*Id.*) The ALJ discussed treatment notes from multiple medical providers regarding Claimant's left tibia. Additionally, the ALJ held that "medical records indicate the claimant experienced no complications and healing of her fracture; and, records have not shown the claimant was using a cane for assistance with ambulation, before surgical treatment or observations by treating and examining sources (Tr. at 21).

The ALJ's RFC for Claimant included limitations such as standing/walking for 2 hours in a normal 8 hour work day. Claimant was limited to occasional stooping, crouching and kneeling. The ALJ held that Claimant was limited in performing work with operation of foot controls using the left lower extremity (Tr. at 14).

The undersigned respectfully recommends that the District Judge find that the ALJ reasonably afforded partial weight to Ms. Burge's opinion. As a nurse practitioner, Ms. Burge is not an acceptable medical source under the regulations. *See* 20 C.F.R. § 416.913. Furthermore, the ALJ gave the opinion of Ms. Burge appropriate weight only to the extent that it is supported by the factors listed in 20 C.F.R. § 416.927(c).

Additionally, the undersigned respectfully recommends that the District Judge find that the ALJ did not overlook Claimant's right upper extremity, shoulder and left lower extremity impairments. The undersigned suggests the District Judge find that the ALJ included limitations in Claimant's RFC in response to Claimant's extremity impairments.

## Credibility

Claimant asserts that the ALJ's "findings regarding the claimant's credibility are so vague that no reasonable review can be undertaken of them." Claimant argues that the ALJ should not have found that Claimant was not credible because she missed consultative examinations (ECF No. 9). Claimant asserts that Claimant had "no income, no more vehicle and no phone." (*Id.*) Defendant asserts that "The ALJ noted [Claimant's absence from two scheduled consultative examinations] in discussing the weight he afforded the state agency opinions, and not as part of evaluating Plaintiff's subjective complaints" (ECF No. 10). Defendant avers that "notwithstanding the missed consultative examinations and gaps in treatment, the ALJ assessed a very restrictive RFC assessment, indicating that he afforded appropriate weight to Plaintiff's subjective complaints." (*Id.*)

The ALJ's decision is dated September 11, 2014 (Tr. at 24). At the time the ALJ issued his decision, Social Security Rule (SSR) 96-7p provided:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. SSR 96–7p, 1996 WL 374186, at *1 (July 2, 1996).

11

In determining Claimant's residual functional capacity, the ALJ considered Claimant's "subjective complaints with regard to pain, precipitating and aggravating factors, medications and other treatment, and any functional restrictions and claimant's daily activities" (Tr. at 16). The ALJ held:

> The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of claimant's own description of her activities and lifestyle, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the medical history, the findings on examination, the claimant's assertions concerning her ability to work and the reports of the reviewing, treating and examining practitioners. (*Id.*)

Upon consideration of the evidence, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*)

Almost one and one-half years after the ALJ issued his decision, SSR 96–7p was rescinded and replaced by SSR 16-3p. The new Rule provides, in part:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.] SSR 16-3p 2016 WL 1119029, at *10 (S.S.A. Mar. 16, 2016).

12

The new Rule eliminates the term "credibility" and clarifies "adjudicators will not assess an individual's overall character or truthfulness." *Id.* at *1, 10.

The current decision was issued before SSR 16-3p took effect, therefore, the ALJ's decision should be reviewed under Rule 96-7p. *Holbert v. Colvin*, No. 2:15-CV-11550, 2016 WL 4939114, at *13 n.5 (S.D. W. Va. June 9, 2016) (Eifert, Mag.) (evaluating claim under 16-3p as it merely clarified the existing law); but see *Kinchen v. Colvin*, No. 3:16CV55(JAG), 2016 WL 7646364, at *7 n.2 (E.D. Va. Dec. 20, 2016), report and recommendation adopted, No. 3:16CV55 (JAG), 2017 WL 57135 (E.D. Va. Jan. 4, 2017) (reviewing decision under Rule 96-7p because the decision was issued before 16-3p took effect); *Piper v. Colvin*, No. 2:15-CV-12555, 2016 WL 5109521, at *4 n.2 (S.D. W. Va. Sept. 20, 2016) ("SSR16-3p is effective only to decisions issued after its effective date of March 28, 2016."); *Vest v. Colvin*, No. 2:15-CV-05886, 2016 WL 5334668, at *5 n.5 (S.D. W. Va. Sept. 22, 2016) (finding "that the ALJ's analysis of Plaintiff's subjective symptoms, even if it speaks in terms of 'credibility' as described in SSR 96–7p, employs the correct process and evaluates the correct factors under either ruling, and so makes no finding as to SSR 16–3P's retroactive application").

Under the first step, "there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the . . . symptoms alleged." *Craig v. Chater*, 76 F. 3d 585, 589 (4th Cir. 1996) (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)) (emphasis from *Craig* deleted). If a claimant meets this threshold obligation, the ALJ proceeds to the second step, which entails evaluating "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [the claimant's] ability to work." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1)). At this second step, the ALJ has full discretion to

weigh Claimant's statements with the objective evidence. The ALJ "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] treating or nontreating source or other persons about how [the claimant's] symptoms affect" him or her. 20 C.F.R. §§ 404.1529(c)(4) and 416.929.

In this case, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (Tr. at 16). In other words, the ALJ found Claimant met the threshold requirements of step one. At step two, the ALJ's evaluation considered the correct factors and employed the correct process under the Rule that existed at the time of the decision.[1] That is, the ALJ weighed Claimant's statements against the rest of the evidence and found the other evidence did not support Claimant's assertions.

At the hearing, Claimant testified to experiencing left leg pain and the use of an ambulatory assistive device (Tr. at 52-54). In April 2014, Ms. Burge's original treatment notes reflect that Claimant "ambulate[d] normally" (Tr. at 577). Dr. McCarthy noted that Claimant had a normal gait with no limp and ambulated without an assistive device after the surgery removing the hardware in Claimant's leg (Tr. at 563, 572). On April 23, 2014, Ms. Burge gave Clamant a prescription for a cane and an ankle brace (Tr. at 590). On June 27, 2014, Ms. Burge amended her treatment records to report that Claimant requires a cane to walk short distances (Tr. at 612).

Even though the record is inconsistent as to whether Claimant ambulated with a cane, the ALJ gave Claimant the benefit of doubt and determined Claimant could perform a range of

---

[1] In *Vest*, the Honorable Thomas E. Johnston further stated "there exists no binding authority addressing whether [SSR 16-3p] should apply retroactively to SSA decisions that were rendered before the ruling was issued." *Id.* (citation omitted).

sedentary work and "would retain the capacity for standing/walking for 2 hours in a normal 8 hour work day" (Tr. at 14). The ALJ limited Claimant's sedentary work to occasional stooping, crouching and kneeling. Likewise, the ALJ considered Claimant's allegations of left leg pain by precluding her from "performing work with operation of foot controls using the left lower extremity." (*Id.*) Therefore, the undersigned proposes the District Judge find that substantial evidence supports the ALJ's limited RFC of Claimant according to the weight afforded Claimant's subjective complaints in light of the record as a whole.

## Conclusion

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that the ALJ's decision is supported by substantial evidence. Accordingly, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Claimant's Motion for Judgment on the Pleadings and Memorandum in Support of Claimant's Motion for Judgment on the Pleadings (ECF No. 9), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 31, 2017

_____
Dwane L. Tinsley
United States Magistrate Judge